UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KATHY K., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00697-TAB-JMS |
| | ) | |
| KILOLO KIJAKAZI Acting Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S
BRIEF IN SUPPORT OF APPEAL**

**I.   Introduction**

Plaintiff Kathy K. appeals the Social Security Administration's denial of her application for disability insurance benefits. Plaintiff argues that the Administrative Law Judge erred in calculating her residual functional capacity. Plaintiff contends that the ALJ's physical RFC determination was unsupported by substantial evidence because she failed to properly evaluate the opinion of Plaintiff's treating physician, and the ALJ's mental RFC determination was also unsupported by substantial evidence because she failed to properly evaluate the opinion evidence in the record related to her mental impairments. However, the ALJ's decision reflects proper consideration and analysis of all the opinion evidence in the record. Plaintiff's physical examinations showed that she had normal gait, strength, and sensation, and no significant abnormalities. Her mental status examinations likewise showed she was cooperative with an appropriate mood and affect in virtually every instance. Given that evidence, the ALJ reasonably discounted the medical opinions finding that Plaintiff had significant physical and mental limitations. Therefore, Plaintiff's request for remand is denied. [Filing No. 19.]

**II.     Background**

On December 11, 2017, Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning on January 2, 2012. Plaintiff also protectively filed a Title XVI application for supplemental security income on October 26, 2017. The SSA denied Plaintiff's claims initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. Before reaching step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 2, 2012, the alleged onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: diabetes; diabetic neuropathy; and obesity. [Filing No. 15-2, at ECF p. 18.]

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or her remaining ability to work despite her limitations. The ALJ concluded that Plaintiff had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) and 20 CFR § 416.967(a). [Filing No. 15-2, at ECF p. 23.] At step four, the ALJ concluded that Plaintiff could perform past relevant work as a sedentary, semi-skilled medical records clerk and a sedentary, semi-skilled insurance clerk as actually and generally performed. [Filing No. 15-2, at ECF p. 29.] Accordingly, the ALJ concluded that Plaintiff was not disabled.

2

**III.	Discussion**

Plaintiff argues that both the ALJ's physical and mental RFC determinations are unsupported by substantial evidence due to the ALJ's alleged failure to properly evaluate the opinion evidence. The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence. *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)). In addition, the Court reviews "to determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

*A.	Plaintiff's physical RFC*

Plaintiff argues that the ALJ's physical RFC determination is unsupported by substantial evidence because the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician, Dr. Jeffrey Hiltz. As noted above, the ALJ found Plaintiff had the RFC to perform the full range of sedentary work, which is defined in 20 C.F.R. § 404.1567(a) as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." Additionally, while a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Thus, the

regulations note that jobs are sedentary "if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

Dr. Hiltz opined that Plaintiff was not capable of even sedentary work. Dr. Hiltz had been treating Plaintiff for her physical impairments since 2007. [Filing No. 15-7, at ECF p. 5.] These impairments include fibromyalgia, uncontrolled diabetes, and severe diabetic neuropathy. In November 2017, Dr. Hiltz opined that Plaintiff could sit for only one hour total in an eight-hour workday and stand or walk for only one hour in an eight-hour workday. He also opined that Plaintiff could only occasionally lift less than 10 pounds. Sedentary work, however, involves lifting up to 10 pounds. Thus, Plaintiff argues that Dr. Hiltz's opined physical limitations are disabling. [Filing No. 19, at ECF p. 15.]

However, the ALJ reasonably found that Dr. Hiltz's work-preclusive opinions on Plaintiff's physical limitations were not persuasive because they were not supported by physical examinations, which indicated Plaintiff had normal gait, strength, sensation, and the ability to walk on her toes, tandem walk, and squat. [Filing No. 15-2, at ECF p. 27.] Plaintiff claims that the ALJ relied too much on objective findings and failed to consider her reports of pain. [Filing No. 19, at ECF p. 15.] In addition, Plaintiff argues that there is no indication that the ALJ considered Plaintiff's pain in her evaluation of Dr. Hiltz's functional limitations opinion, specifically that Dr. Hiltz's limitations stemmed from Plaintiff's severe diabetic neuropathy and pain, rather than the results of objective examination findings. [Filing No. 19, at ECF p. 16.] Yet the ALJ acknowledged Plaintiff's subjective reports of neuropathic pain multiple times throughout her decision before ultimately concluding that Plaintiff's allegations of pain, other symptoms, and functional limitations were not entirely consistent with the evidence. [Filing No. 15-2, at ECF p. 29.] While the ALJ "accept[ed] [Plaintiff's allegations that her symptoms limited

4

her functional capacity to some degree," the record did not show that she was so limited as to be unable to engage in any substantial gainful activity, as Dr. Hiltz had opined. [Filing No. 15-2, at ECF p. 29.] The ALJ reasonably concluded that if Plaintiff was as limited as Dr. Hiltz opined, the record would provide some supporting evidence of that. The Court looks at the ALJ's decision in its entirety, rather than piecemeal. *See, e.g., Rice v. Barnett*, 384 F.3d 363, 370, n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five." (Internal citation omitted)). And under this lens, the ALJ's decision as a whole reflects consideration of Plaintiff's pain in relation to Dr. Hiltz's functional limitation assessment.

Plaintiff further argues that the ALJ ignored consistency between Dr. Hiltz's opinion and the opinion of physical consultative examiner Dr. John E. Mericle. [Filing No. 19, at ECF p. 16-17.] Dr. Mericle, like Dr. Hiltz, concluded that Plaintiff's chief problem is her diabetic neuropathy and fibromyalgia/pain. [Filing No. 15-7, at ECF p. 307.] The ALJ did not identify or discuss the consistency of Dr. Mericle's findings with Dr. Hiltz's opinion. Plaintiff claims this was legal error. [Filing No. 19, at ECF p. 16.] However, Dr. Mericle noted Plaintiff had the functional capacity to walk 3 miles, could stand for 10 minutes, could climb 3 ½ flights of stairs, and could lift 10 lbs with her right arm, left arm, and both arms. [Filing No. 15-7, at ECF p. 299.] Dr. Mericle did not impose any physical limitations and reported that Plaintiff had a normal physical examination. Thus, Plaintiff's argument that the ALJ should have probed deeper into consistencies between the findings of Dr. Mericle and Dr. Hiltz is not compelling.

Finally, Plaintiff argues that the ALJ "committed further error in failing to discuss the supportability factor at all in his evaluation of Dr. Hiltz's opinion." [Filing No. 19, at ECF p. 17.] Supportability refers to the extent to which a medical source opinion is supported by relevant objective medical evidence and supporting explanations that come from the source itself. 20 C.F.R. § 404.1520c(c). Plaintiff notes that in his physical assessments, Dr. Hiltz: explained that Plaintiff suffered from fibromyalgia, uncontrolled diabetes, severe diabetic neuropathy, and hepatitis C; noted that her symptoms included chronic low back pain, vomiting, and drowsiness due to side effects from medications; and concluded that Plaintiff was unable to sit for more than one hour total in an eight-hour workday, could not stand/walk for more than one hour in an eight-hour workday, would need to shift positions at will, and would require additional breaks throughout the workday because of her severe pain. [Filing No. 15-7, at ECF p. 233-36.] Plaintiff argues that the ALJ failed to identify or address Dr. Hiltz's explanation for his opined physical limitations.

However, the ALJ's decision reflects that the ALJ considered Dr. Hiltz's opinion in its entirety and fully acknowledged Plaintiff's neuropathic pain. Notably, Plaintiff did not point to any evidence in Dr. Hiltz's treatment notes demonstrating she was as limited as he found. She simply recited his findings, which the ALJ directly articulated in her decision. Overall, the ALJ's decision demonstrates consideration of Plaintiff's severe impairments, recognition of the pain that resulted from those and non-severe impairments, and ultimately a finding that Plaintiff could still do sedentary work despite those impairments. Plaintiff has not established reversible error in the ALJ's analysis of her physical impairments and the resulting RFC.

### B. *Plaintiff's mental RFC*

Plaintiff similarly argues that the ALJ failed to properly evaluate the opinion evidence, which resulted in a mental RFC determination unsupported by substantial evidence. [Filing No. 19, at ECF p. 19.] In addition to her physical impairments, the ALJ determined Plaintiff suffers from the nonsevere medically determinable impairments of bipolar disorder, anxiety, and PTSD. [Filing No. 15-2, at ECF p. 19.] These mental impairments were also diagnosed by Dr. Hiltz and the consultative examiner, Brittany Dale, Ph.D. [Filing No. 15-7, at ECF p. 3, 309.]

Dr. Hiltz opined that in November 2017, Plaintiff had marked limitations in the ability to work at a consistent pace, complete tasks in a timely manner, use reason or judgment to make work-related decisions, adapt to changes, and manage psychologically-based symptoms. [Filing No. 15-7, at ECF p. 233-34.] Dr. Hiltz also found Plaintiff had marked-to-extreme limitations in every category related to interacting with others. [Filing No. 15-7, at ECF p. 235.] In relation to Dr. Hiltz, the ALJ found his opinions regarding Plaintiff's mental impairments to be nonpersuasive, because there were no records in evidence to support severe mental health limitations. [Filing No. 15-2, at ECF p. 28.] The ALJ stated: "On the sporadic occasions in evidence that mental health symptoms were reported by the claimant, examination all reported the claimant to be alert, cooperative, and oriented. There are no findings regarding moods, affects, attention, concentration, memory, judgment, or insight to indicate the claimant is as limited as reported." [Filing No. 15-2, at ECF p. 28.]

The ALJ found consultative examiner Dr. Dale's opinion to be partially persuasive. [Filing No. 15-2, at ECF p. 28.] At her consultation in January 2018 with Dr. Dale, Plaintiff appeared as if she was going to fall asleep. [Filing No. 15-7, at ECF p. 310.] The ALJ noted that Dr. Dale indicated in her report that it was unclear to her whether Plaintiff's significant tiredness

7

was due to over-medication, intoxication, or lack of sleep.  [Filing No. 15-2, at ECF p. 20.]  Dr. Dale opined that given her presentation at the evaluation, Plaintiff would likely have significant occupational difficulty as compared to her peers.  Specifically, Dr. Dale found that Plaintiff would be expected to have difficulty attending to even simple tasks for a two-hour period and work at a slower pace than her peers.  [Filing No. 15-7, at ECF p. 312.]  The ALJ noted that the level of sleepiness reported during Dr. Dale's examination of Plaintiff would make it difficult for anyone to perform in an occupational setting.  However, the ALJ found that the remainder of records in the evidence did not report Plaintiff to be this impaired, either from substance use, over-medication, or lack of sleep, indicating this was not a normal state for Plaintiff.  The ALJ also noted that Plaintiff did not present in such a manner at the hearing.  [Filing No. 15-2, at ECF p. 28.]

     Finally, the ALJ addressed the February 2018 findings of state agency psychological consultant Kari Kennedy, Ph.D., which another state agency psychological consultant, B. Randal Horton, Ph.D., agreed with in July 2018.  Dr. Kennedy opined that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods; in her ability to interact appropriately with the general public; and in her ability to accept instructions and respond appropriately to criticism from supervisors.  The ALJ found the state agency psychological consultants' opinions nonpersuasive because "the totality of the records in evidence supports the claimant does not have any severe mental impairments."  [Filing No. 15-2, at ECF p. 29.]  The ALJ once again noted that there are very few records in evidence regarding mental health symptoms, and those that are, other than the consultative examination with Dr. Dale, only reported Plaintiff as alert, cooperative, and oriented.  [Filing No. 15-2, at ECF p. 29.]

8

Moreover, the ALJ reiterated that there are no findings regarding moods, affects, attention, concentration, memory, judgment, or insight to indicate Plaintiff is as limited as reported.

Plaintiff argues that "[d]espite this apparent consistency in the medical opinions with respect to limitations on Plaintiff's ability to remain focused and attentive to tasks and perform at a consistent pace, the ALJ failed to discuss [the consistency] factor in his evaluation of the opinion evidence." [Filing No. 19, at ECF p. 20.] The SSA regulations describe various factors the ALJ must consider in evaluating medical opinions and prior administrative medical findings in a case, including consistency. *See* 20 C.F.R. § 404.1520c(c) ("Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). The ALJ looked at the entire longitudinal record when evaluating each of the opinions that addressed Plaintiff's mental impairments and explained why she found those records nonpersuasive or only partially persuasive.

Specifically, in relation to Dr. Dale, the ALJ explained that Plaintiff's extreme sleepiness at her examination appeared to be an outlier—no other records documented that Plaintiff was ever as impaired as she was during her examination with Dr. Dale. Similarly, the ALJ reasonably discounted Dr. Hiltz's opinion that Plaintiff had work-reclusive mental impairments. The ALJ explainined that there are no records supporting the fact that Plaintiff had severe mental health limitations and no findings suggesting limitations in mood, affect, concentration, memory, judgment, or insight to indicate Plaintiff was as limited as Dr. Hiltz found. The ALJ applied the same reasoning before discounting the state agency psychological consultants' opinions as well.

9

The Court acknowledges the rather peculiar outcome of this case: multiple physicians in the record consistently agreed that Plaintiff was limited around mental functioning. However, "[t]he regulations require the ALJ to assess how consistent an opinion is with the entire record as a whole, not only with another opinion." *Gwendolyn P. v. Kijakazi*, No. 20 C 3339, 2021 WL 5204858, at *9 (N.D. Ill. Nov. 9, 2021) (affirming ALJ's decision to discount two opinions finding claimant needed a sit/stand option and would be off-task for 15 percent of the workday). The ALJ's decision reflects consideration and analysis of each of the opinions noted by Plaintiff and explains why the ALJ found then non-persuasive or partially persuasive. Like the decision in *Gwendolyn P.*, because the ALJ provided sufficient reasons supported by the record for discounting Dr. Hiltz's and Dr. Dale's opinions—despite their apparent consistency with each other—the ALJ did not err in evaluating the opinion evidence. *Id.*

The ALJ did not ignore evidence, she just weighed it differently than Plaintiff feels it ought to have been waived. *Cf. Gedatus v. Saul*, 994 F.3d 893, 901 (7th. Cir. 2021) ("This is not a case where an ALJ ignored evidence contrary to his conclusion."). The ALJ assessed all of the relevant evidence, and found the majority of the medical opinions unpersuasive because the totality of evidence in the record did not support a need for such limitations. Plaintiff essentially asks the Court to reweigh the evidence, but that is not the Court's role. *See, e.g., Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) ("The court's role is not to reweigh evidence, but to determine whether the ALJ built an accurate and logical bridge between the evidence and the conclusion.") (Internal citation and quotation marks omitted)). *See also Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) ("[E]ven if reasonable minds could differ on the ALJ's rejection of Zoch's testimony, we will not reweigh evidence or substitute our judgment for the ALJ's."). Since the ALJ's decision is supported by substantial evidence, remand is improper.

10

**IV.     Conclusion**

Plaintiff has failed to show any reversible error with the ALJ's decision in relation to both the ALJ's analysis of Plaintiff's mental and physical impairments and the resulting RFC. Because the ALJ's findings were supported by substantial evidence, Plaintiff's request for remand [Filing No. 19] is denied.

Date: 6/15/2022

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email